Case No. 15-1312 et al. Midwest Division, MMC, LLC Doing business as Menora Medical Center Petitioner v. National Labor Relations Board Mr. Daborky for the Petitioner, Ms. Isbell for the Respondent, Ms. Darrow for the Intervenor Good morning, Your Honors, and may it please the Court I'm Shai Dvoretsky with Jones Day representing the Petitioner With the Court's permission, I'd like to reserve two minutes for rebuttal The NLRB's fundamental error in this case was that it ignored the distinction between state licensing on the one hand and employee discipline on the other Peer review committees like the one at issue in this case exist in all 50 states Their purpose is to ensure the safety of patients, not to govern the terms and conditions of employment The NLRB has never before attempted to assert jurisdiction over the work of these committees And doing so here threatens the candor and confidentiality necessary to effectuate the purpose of these committees, which again is patient safety The Board's failure to recognize that peer review committees operate separately from employee discipline resulted in four reversible errors First, the Board improperly asserted jurisdiction over the work of these committees Without so much as acknowledging the unprecedented nature of that holding or addressing Menora's jurisdictional argument Second, the Board extended Weingarten rights to a proceeding It might work best if we do each one of these one at a time On that first argument, the ALJ did address the question, right? The ALJ addressed it, but the Board did not Typically, you can say that about almost every single Board case Because typically the Board opinions that we see basically say nothing more than we adopt the opinions, decisions, judgments, factual decisions of the ALJ And we've always held that sufficient consideration Now, whether it's correct or not, that's a different matter But we've never held that the ALJ's own opinion has to restate what the ALJ said, have we? I respectfully disagree that you've never held that You have, for example, in the Yukon-Kuskokwim Health Corporation case I apologize if I'm mispronouncing that It's 234 F3rd 714 And in that case, the Board remanded This Court remanded because the NORB failed to adequately address a jurisdictional issue Did the ALJ address it in that case? I believe the ALJ did address it, but the Board did not And of particular importance there, it was a jurisdictional question That, like this case, posed a conflict between the applicability of the NORA on the one hand And another statutory regime on the other There it was the Indian Self-Determination Act Here it's the Kansas Peer Review Proceeding And so to talk about the jurisdictional issue The peer review committees at issue here are exempt under both prongs of the Hawkins test So can I just ask, why are you focusing on the peer review committee as opposed to the company? Are there other cases in which it seems like it would be conceded that the company is an employer But the question then becomes whether some sub-aspect of the company Is one as to which you could call it a political subdivision? I don't think it's a sub-aspect I think this is an unusual case Where you have hospital employees who are serving in a particular function Where state law designates them as state officers So it is an unusual sort of hybrid situation But that is precisely why the Board had to do more than just rubber stamp the ALJ's findings on jurisdiction Without addressing the jurisdictional issue itself That's what makes this a complicated question If we just look past, just for one moment, the fact that the Board didn't specifically discuss the issue in its opinion And just talk substantively about the issue Is there support for the proposition that a peer review committee That even in the company's own description is part of the company It's a menorah body It's definitely... Genesis comes from state law, I understand that But the menorah treats it as a menorah body Is there some support for the proposition that we would say That that body, even though it's part of an employer Is nonetheless a political subdivision as to which the Board lacks jurisdiction When the unfair label practice is alleged to be committed by the employer, the company Judge Srinivasan, it's a novel question The closest that I can give you to support for that is the Ninth Circuit's decision in the Mount Vernon case Where even though it was an employer who was disciplining a sailor on board a ship That was held to be outside the scope of wine garden rights under the NORA So that goes to the question of whether wine garden The substantive wine garden inquiry comes out differently because of the nature of the functions As opposed to whether the Board just has jurisdictional authority over the entity Because I don't think that was a jurisdictional case It was not, but there's an analogous principle that underlies both the jurisdictional question And the wine garden question  But rather is carrying out an obligation under some other source of law And in the Mount Vernon case, wine garden rights weren't applicable Because the disciplinary proceeding there was not pursuant to the employer's economic power But was pursuant to the obligation under state or federal law, I can't recall To ensure safety aboard the ship You could make that same argument as a substantive argument as to why wine garden In your view shouldn't apply as opposed to an argument That this case involves a political subdivision that lies wholly outside the Board's jurisdiction Yes, and I don't mean to shift gears between jurisdiction and wine garden No, I just wanted to make sure I understood conceptually That the arguments, the substantive arguments you're making Would do work under either conceptual lens That's right The same core substantive point applies to a number of different issues in this case Are you on the jurisdictional point? Is the committee a state actor for other purposes? I don't know that it would be a state actor for other purposes Except insofar as state law specifically provides that the PRC members The peer review committee members are state officers engaged in a discretionary function of the state And that's the key point here Is that these individuals while employed by the hospital For the purposes of their services on the peer review committee Are functioning as state actors The only reason that the peer review committee exists is that it is a function of state law It was established by the state Is it subject to 1983 liability then? I don't know whether it would be subject to 1983 liability or not That's not an issue that has been litigated to my knowledge Well it actually has the 10th Circuit says not So the idea that it's a state actor for all purposes really doesn't work And I assume you don't want to be subject to 1983 liability That's the point of my question No, of course we don't want to be subject to liability as a state actor But the Hawkins test when you look at it When you look at the Supreme Court's opinion The Supreme Court did not say that the Hawkins test has to be applied mechanically To each potential political subdivision What the Supreme Court did in that case was It said it reversed the board for improperly applying its own Hawkins test While leaving open the possibility that in other cases A different test would apply Looking at the actual operations and characteristics of the entity at issue When I look at Hawkins the court explains I'll just read it to you The legislative history does reveal That Congress enacted the exemption to accept from board cognizance The labor relations of federal, state, and municipal governments Since governmental employees did not usually enjoy the right to strike In the light of that purpose And then they go forward with the test There's no argument that these peer review people Are themselves government employees Members of the committee They're employees of the hospital, aren't they? They are, but the only reason that they are performing this function Is to carry out a state licensing function This has nothing to do with the relationship between the state as employer And the committee members as employees of the state Which is what the Supreme Court said was the reason for the exemption But it does have to do, however, with carrying out a state function Versus the employer-employee relationship Which is what the NORA is meant to govern On your Weingarten issue, if we get to that And get past the jurisdictional issue, not in your favor What is the practical harm from your perspective Of applying Weingarten rights to these committees? The practical harm is that these committees depend on confidentiality In order to carry out their purpose of ensuring patient safety When you introduce a third-party union representative You destroy that confidentiality You make candor among peers Which, again, this is a peer review committee You make candor more difficult And you change the dynamic from one that is focused on Protecting patient safety above all else To a union intervening in a process In order to protect employees' terms and conditions of employment Which is not what these proceedings are about The disciplinary proceedings in the hospital operate on a separate track And employees have full union representation throughout that process If it had dual purposes If it served both the state licensing purpose And employee discipline purposes Would you be making the same argument? That's a bit of a difficult question to answer in the abstract Because I think it would depend, again, as the Court said In Hawkins in connection with the jurisdictional issue On the actual operation of the committee And what it's really doing Well, your answer to that has to be no, I think Because the whole point of your argument, as I understood it Was this is not a disciplinary process Right, and then getting back to this case The key point is The key line is discipline is not involved here Right And if discipline were involved, different case If it were a true hybrid case, that would certainly be different So can I ask you then on a true hybrid case I'm looking at the risk The Menorah Medical Center Risk Management Plan In the appendix, and it says At JA 68 Down towards the bottom of the page Use of risk management data And it says When the investigation of a reported incident Results in an adverse finding The event will be considered at the time of recredentialing Of members of the medical staff or allied health professionals Or employee performance evaluations And then later on, on C, it says Internal institutional actions may be taken As a result of the investigation and data Does that indicate that part of the policy itself That risk management portion of the inquiry Seeps into employee performance evaluations And internal institutional actions Or is that not what that says? No, and let me make a few points to address that First of all, as a practical matter The hospital's internal disciplinary process Proceeds much faster than the peer review process And in this case, for example Any discipline for one of the incidents at issue Occurred two months before the peer review committee Even initiated its proceedings And so there are separate tracks And by the time anything is reported to the hospital As a result of the peer review committee Any hospital discipline procedure Would have already been completed Second of all, as far as recredentialing is concerned If a nurse loses a license Any resulting consequence of that in employment Is not a matter of hospital discipline It's simply a matter of state law That imposes consequences for not having a license With respect to performance evaluations Performance evaluations are not discipline And there's no evidence in this record To the contrary, there is testimony That no nurse has ever been placed On a performance improvement plan Which might be considered a form of discipline As a result of the work of the peer review committee So you think Weingarten doesn't apply To something that's called Employee performance evaluation? If there's an employee performance evaluation process And performance evaluations I would think naturally beget Employment consequences potentially That Weingarten rights don't apply To the employee performance evaluation as such? I think it wouldn't Because that's not a form of discipline But I also think that that's removed from this case Because here the sole purpose Of the peer review committee Is to report reportable incidents To the nursing board for licensing purposes Not for disciplinary purposes Disciplinary Keep going No, please You had a third argument, I think You had four at the start We've only gotten to one and two, I think Yes Your third's pretty strong, I think So the third argument Is that the board improperly Compelled Menora To turn over confidential information Oh, I thought the third was going to be Whether they had a choice They had a choice not to I thought you were asking me to move on from Weingarten The second part of our Weingarten argument Okay, sorry Part B, yeah Whether or not the proceedings Are considered disciplinary Weingarten does not apply When the proceedings are voluntary And it's undisputed here That the proceedings were voluntary The nurses at issue admitted that In fact, one of the nurses Chose not to attend One of the proceedings at issue The letters that the nurses received At the outset of the process Made crystal clear that the interview Was voluntary They explicitly offer The opportunity to speak With a nursing peer review committee If you choose They acknowledge the employee's right Of waiver of the opportunity to appear And they allow the employee To submit a written response To the committee In lieu of an appearance Which one of the nurses did hear And so the Weingarten right Even if it could apply in theory To a peer review committee proceeding Does not apply Where attendance is voluntary So what would make it involuntary Is involuntariness applies Only in a situation in which A sanction attaches to the failure to appear Or how would you define a situation In which you don't have a choice Whether to appear Whether there's a sanction or not I would say it's involuntary If the letter had said You must appear at the following date and time And whether the sanction is spelled out or not If you receive that letter from your employer I think you would treat that As a mandatory obligation But here we're so far removed from that No, but I don't know I guess the question is So even if a letter says you may appear If everybody knows there's a consequence To not appearing Then the question is whether it's voluntary Right, it could say You can appear or you can't appear By the way, if you don't appear You're going to be fined $10,000 I think everybody would agree that's involuntary Well, but that's not what happened here Right, so then the question becomes What's the consequence of not coming Do you think that matters The consequence of not coming And this follows from Weingarten itself Is that the employer will conduct Whatever investigation the employer is going to conduct Without an in-person appearance from the employee Perhaps with a written submission Which is offered here And so even if there were some hypothetical situation Where the consequences were so coercive As to make the appearance involuntary This is far removed from that And falls squarely within what the Supreme Court Yeah, I'm not saying I necessarily disagree with you I'm just trying to understand When we get to compulsion in this context So suppose the letter says Or the letter's fairly read to say You can show up at the hearing You don't have to show up at the hearing If you don't show up at the hearing You won't have a chance to tell your side of the story And based on the other evidence we've collected We think it's pretty clear That you committed some inappropriate conduct But you don't have to show up at the hearing We'll base our determination on independent evidence That we've collected Without the benefit of your testimony at the hearing Would you say that that's a situation In which Weingarten doesn't apply Because the person has a choice? And that may well be I think that is a situation Where Weingarten does not apply Because the person has a choice in that situation Weingarten itself says that And that falls squarely within The Supreme Court's own opinion It's right on 259 Weingarten You lose the benefit That you would otherwise gain By participating in the process Right, I'm just trying to understand your argument So that's Then my last question on this line And then I'll Permission to move on, forgive me Is the board cites an opinion In its brief Our decision in AFGE Local 1941 Versus FLRA Which is 837-F-495 Which talks, in the FLRA context It talks about a statute That implements Weingarten And the board's understanding Of that decision And I can understand Why they have this understanding If you read the decision Is that we construed Weingarten In that case To extend beyond Formal compulsion In the way that you're talking about To talk about effective compulsion Which is to say If it would be bad for you Not to show up Because some consequences could follow That's still Weingarten Do you have a response About that decision in particular? If I may Let me respond to that On rebuttal To that particular decision But I think the core point Is that Weingarten itself Contemplates that Of course there's a consequence For not showing up You lose the benefit Of telling your side of the story Can I ask you also On rebuttal Will you just check into this Question about UConn I haven't been able To find any You can wait until you're rebuttaled Unless you have it The question is Was the problem there Not only that the board Didn't consider it But that the ALJ Also didn't consider it Because I don't have any reference To the ALJ Considering it in that issue Of course either Which would be different than this Let me just ask you One other thing If you could help me Understand the Kansas Statute 65-4923 The one about The reporting requirements And maybe I'm looking At a section That's totally inapplicable I'm looking at A2 And in the middle of it It says the committee And that committee I think being the Peer review committee Which was mentioned In the previous sentence Shall investigate All such reports And take appropriate action Including recommendation Of a restriction Of privileges At the appropriate Medical facility The committee shall Have the duty To report to the appropriate State licensing committee Et cetera That sounds like The statute is giving The committee The mandatory responsibility To make a recommendation Of restriction    Issue Is that wrong But I think that the two Rise and fall together In other words The committee Shall have the duty To report To the appropriate State licensing Committee Et cetera In other words If the incident Is so serious That the recommendation Is that a license Be revoked That may Automatically As a matter Of state law Involve restrictions At the hospital That's still different However From hospital Initiated discipline Which proceeds here On a separate track So you don't think That the order In which the statute Puts this Which is first They're supposed to In terms of the order Of the sentences First Make a recommendation About restriction Of privileges At the hospital And also Have the duty To report To the licensing You don't think That that means That these Peer review committees Are supposed to have Anything to do With restriction Of privileges At the hospital Before a licensing Determination No because I think That only the nursing Board can ultimately Make the licensing Determination Which may have Consequences For the ability Of a nurse To practice at the hospital But it's not A separate determination Which the hospital Can restrict privileges Without a determination By a licensing board Can't it? It can But that's not something That the peer review Committee does That's something That the hospital Does through its own Separate process I see And is any information From the peer review Committee go to The disciplinary process Imagine We're not talking About your specific hospital Which unfortunately We don't have the evidence About that you just Mentioned on the record That is disciplinary Proceedings all happen First and licensing All happens later So I'm looking At a more generalized Situation Imagine you have A hospital In which first Comes the licensing Decision And then comes The discipline Does information From the peer review Committee go to The disciplinary Committee At the hospital So as your Honor's question Recognizes That's certainly Not the case here And I don't think That that could happen At another hospital Either because of The privilege That attaches To peer review Committee proceedings Under state law Under the State statute The privilege Applies to Report statements Memoranda Proceedings Findings And other records Submitted to Or generated by Peer review Committees or Officers So there's a Broad privilege That attaches To the sort Of information That your Honor's question Is referring to That would prevent That from being Disclosed within The hospital And used for Other purposes Precisely because The peer review Committee is Privileged And Privileged even From the hospital Itself So the Privilege Belongs to The committee And so it would Be I think Privileged even From the hospital Itself Can I just ask One more question I'm sorry we're Way into your Time but we'll Give you a chance For rebuttal anyway About the Restriction on Disclosing reportable Information as Compared to the Statutory which Is about reported Information or At least about Which is about Reported information Submitted information Why isn't it Too broad to Say reportable Information Because reportable Incidents a Nurse who is Charged with Understanding the Peer review Process in Kansas is Charged with an Understanding of This statute which Defines a reportable Incident in a Way that is Virtually Identical to The definition of A reportable Incident in The hospital's Plan and it Is best Understood and The only Objectively reasonable Way to understand It is that This hospital Procedure This confidentiality Requirement is Simply tracking the Requirement under State law that Peer review Committees be Treated as Confidential. So the Risk management Plan defines a Reportable incident And it says an Act or practice Which is or May be Below the Applicable Standard of Care or May be a Grounds for Disciplinary action By the appropriate Licensing agency. So that Seems like it's The underlying Act or Practice. Now are You saying That and Then the Restriction says No hospital Employee can Disclose information Concerning reportable Incidents except The superiors Hospital Administration, Etc. So if The employee Wants to Discuss with The union An unsafe Practice in The hospital That can't Be done Because it Might be Reportable? No. I think that The policy is Not meant to Cover the Underlying facts That are That may be Relevant to What the peer Review committee Is doing. It says an Act or Practice. That sounds like The underlying Facts. So the Language in The policy is Tracking 654921F Which refers To a Reportable Incident in Virtually Identical terms To what's In the policy. And that Reportable Incident in The statute Is referring To the Outcome of The peer Review committee Process, not To the Outcome of The policy. It's Separate from What was Generated by Or submitted To the peer Review committee. But do you Agree that the Words of the Risk management Plan sound Broader than That? A nurse would Have to look Somewhere else To think it Was narrower Than the Risk management Plan? The nurse Would have To read the Language of The risk Management Plan.  The risk management          Statement. And I think It's A good Statement. And I think It's A good Statement. And I think It's A good Statement. I think It's A good       I just Wish It Could Have I wished It Could Become That. Because The The Risk Management Plan Required Under The Statute Under Section 4923 To Report It. So You And Anybody On The Peer Review Committee Is A State Officer Serving As A Discretionary Function And You Are Entitled To All Immunity Of The State. The Next Provision C Then Says You're Not An Employee Of The State For Any Other Purpose. So This Provision The Board Found Does Not Give You It Doesn't Make You A State Employee It Doesn't Put You Under Any State Law. You Are Not Responsible To The State In Any Way Except That You Have Reporting Requirements. I Do Want To Talk A Little Bit About The Privilege And Whether Or Not You Have To Disclose To The Hospital Which Was Judge At Stage 250 At The Supreme Court Seems To Make Pretty Clear That It's Okay For An Employer To Have A Process Under Which Independent Evidence Can Be Gathered That Results In Some Sort Of Consequence For The Employee And That The Employee May Be Worse Off By Not Showing Up At The Hearing Because The Employee May Not Be Compelled To Appear At The Hearing Without Union Representation That's Still Okay As A Matter Of Wine Garden Except That What You Are Not Taking Into Account Just By Reading That Part Of It Is The Purpose Of Wine Garden And What The Court Is Talking About Union Representation We Are Not Talking About Whether A Meeting Is Voluntary In And Of Itself Whether The Meeting Is Voluntary Or Compulsory Is Not A Matter Of Wine Garden Absolutely Gives The Employer The Right To Say No You Can't Have One But Once The Employer Says No You Can't Have One The Employer Then Needs To Say You Can't Come With A Union Rep So Now It Is Your Decision You Come With A Union   The Employer Says No You Can't Have One But Once  Employer Says No You Can't Can Have One But  The Employer Says No But Once The   No You Can't Says No You Can't Do It Alone But Once The Employer Says No You Can't Do It Alone  Once The Employer Alone But  The Employer Says No You Can't Do  Alone Employer Says No You  Do It Alone But Once The Employer Says No You Can't Do It Alone But Once The Employer Says No You Can't  It Alone But Once It Alone But Once  Employer Says No You Can't Do It   Once The Employer Says Once The Employer  No You Can't Do But Once The  Says No You Can't The Employer Says No  Can't Do It You Can't Do  Alone But
judges: Garland, Kavanaugh, Srinivasan